**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BOBBI LINN CONANT,**

                          **Plaintiff,**                    3:15-cv-500
                                                                             (GLS)
             v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of John L. Bardsley | JOHN L. BARDSLEY, ESQ. |
| 36 Main Street, P.O. Box 166 | |
| HSBC Bank Building, Second Floor | |
| Cortland, NY 13045 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SERGEI ADEN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Bobbi Linn Conant challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Conant's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On February 13, 2012, Conant filed applications for DIB and SSI under the Social Security Act, alleging disability since February 28, 2011. (Tr.[1] at 88-89, 148-62.) After her applications were denied, (*id.* at 91-96), Conant requested a hearing before an Administrative Law Judge (ALJ), which was held on September 16, 2013, (*id.* at 97, 42-79). On November 15, 2013, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 11-29.) This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 1-6.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Conant commenced the present action by filing her complaint on April 27, 2015 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Conant contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 7-10.) Specifically, Conant claims that the ALJ erred in: (1) evaluating the severity of her back and right shoulder impairments; and (2) analyzing her credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 13-22.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 4-6; Dkt. No. 12 at 3-12.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Social Security Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

Conant first alleges that the ALJ erred in rendering her severity determination. (Dkt. No. 11 at 7-8.) Specifically, Conant argues that the ALJ should have found her back and right shoulder impairments to be severe under the governing regulations. (*Id.*) The Commissioner counters that the ALJ properly considered Conant's impairments at step two of the sequential analysis, and, because the ALJ continued past step-two and considered all of Conant's symptoms and allegations at the subsequent steps, any error in evaluating the severity of Conant's impairments is, at most, harmless. (Dkt. No. 12 at 13-16.) The court agrees with the

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

4

Commissioner.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A finding of not severe is appropriate when an impairment, or combination of those impairments, "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1521(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including, as relevant here, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* § 404.1521(b)(1). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). The failure to find an impairment severe may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her residual functional capacity (RFC) determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL

398952, at *4 (N.D.N.Y. Feb. 7, 2012); see also Plante v. Astrue, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

In this case, the ALJ determined that Conant's lumbar spine condition and right shoulder pain were not "severe" under the regulations. (Tr. at 17.) In making this determination, the ALJ clearly explained her conclusion that the objective medical evidence of record did not support Conant's claims with respect to these impairments. (*Id.* at 17-18.) In particular, the ALJ noted that diagnostic imaging of Conant's lumbar spine was negative and orthopedic surgeon Bradley Wiener diagnosed Conant with merely a lumbrosacral strain, which was treated with conservative measures. (*Id.* at 17.) The ALJ also noted neurologist Khalid Sethi's treatment notes which indicated that there was "no evidence of radiculopathy, cauda equina, or conus symptomatology," and confirmed that imaging studies revealed "no evidence of significant neural compressive pathology." (*Id.* at 18.) The ALJ's recitation of the medical records with respect to Conant's back pain is accurate. (*Id.* at 260-62, 307, 344, 377, 464, 502.) With respect to her right shoulder pain, the ALJ noted that while Conant reported shoulder degeneration, a rotator cuff tear, and frequently dislocating her shoulder, the record contains no medical

6

documentation of such impairments or occurrences. (*Id.* at 18.) The ALJ noted that a 2001 CT scan of Conant's right shoulder indicated a history of brachial neuritis,[3] (*id.* at 381), and Conant complained of right shoulder pain to her treatment provider in March 2007 and February 2010, (*id.* at 384-91). However, as the ALJ explained, such treatment was long before Conant's alleged onset of disability in February 2011, imaging of her right shoulder in February 2010 was unremarkable, and more recent treatment records revealed normal motor skills with no evidence of weakness in her upper extremities. (*Id.* at 18, 307, 316, 383.) Moreover, Conant worked a job up until her alleged onset date that required her to lift as much as seventy-five pounds over her head. (*Id.* at 18, 51-52.) On that date, Conant claims she hurt her back at work and became disabled. (*Id.* at 51, 56.) Because there was no medical evidence of deterioration of any right shoulder impairment or her ability to use her arm since the alleged date of disability, and because she was not treated by any specialist for her

---

[3] "Brachial neuritis is a term used to describe an inflammation of the brachial plexus that causes sudden-onset shoulder and arm pain, followed by weakness and/or numbness." Peter F. Ullrich, Jr., Brachial Neuritis (Parsonage-Turner Syndrome), http://www.spine-health.com/conditions/neck-pain/brachial-neuritis-parsonage-turner-syndrome (last updated Oct. 21, 2011). Notably, the 2001 CT scan revealed "findings compatible with a bony Bankart lesion." (Tr. at 381.) A Bankart lesion is "a common complication of anterior shoulder dislocation." Ian Bickle et al., Bankart Lesion, https://radiopaedia.org/articles/bankart-lesion (last visited Oct. 11, 2015).

shoulder since that date, the ALJ concluded that this too was not a severe impairment. (*Id.* at 18.)

The foregoing analysis of Conant's back and shoulder impairments is legally sound and supported by substantial evidence. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept to support a conclusion." (internal quotation marks and citations omitted)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Moreover, because the ALJ determined that Conant's fibromyalgia was severe, she continued the sequential analysis and analyzed Conant's RFC. (Tr. at 20-23.) When considering Conant's RFC, the ALJ specifically considered Conant's allegations with respect to her back and right shoulder, as well as all of the medical evidence of record. (*Id.* at 18, 20-23.) As the Commissioner points out, (Dkt. No. 12 at 14), the ALJ's RFC determination accounts for limitations in Conant's functioning due to pain in her back and right shoulder, (Tr. at 20). Because the ALJ considered these non-severe impairments in reaching her RFC determination, any error on the part of the ALJ in evaluating their severity

8

is, at most, harmless.  *See Tryon*, 2012 WL 398952, at *4 (explaining that the failure to find an impairment severe may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination).

**B.** **Credibility Determination**

Conant also contends that the ALJ erred in making her credibility determination.  (Dkt. No. 11 at 9-10.)  According to Conant, the ALJ drew improper inferences from the evidence of record with respect to: (1) her use of narcotic pain medication; (2) her reliance on her family for help in completing the activities of daily living; and (3) her ability to sit for a prolonged period of time.  (*Id.*)  After reviewing the ALJ's decision and the administrative transcript, the court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

9

quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Conant's impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not fully credible." (Tr. at 21.) In evaluating Conant's credibility, the ALJ noted that the objective medical evidence does not support Conant's claims with respect to her back pain, there is no medical evidence to support her claims with respect to her torn rotator cuff and frequent shoulder dislocations, and, while she testified to experiencing

severe migraine headaches that required her to administer an Epipen shot to herself, (*id.* at 61), there is no evidence of specialist treatment for headaches. (*Id.* at 21.) The ALJ also found that Conant's "overall work history does not bolster her credibility." (*Id.*) Conant does not challenge the foregoing conclusions of the ALJ. (Dkt. No. 11 at 9-10.) Instead, she takes issue with the ALJ's consideration of her use of opioid pain medication, arguing that because she was only taking such medication as prescribed, there is no basis for the ALJ's conclusion that her testimony was not reliable. (*Id.* at 9.)

A review of the ALJ's decision indicates that, in evaluating her credibility, the ALJ considered Conant's history of substance abuse, which the ALJ concluded there was evidence of both before and after the alleged onset date. (Tr. at 21, 318, 369, 433, 477.) The ALJ noted that since her alleged onset date, one of Conant's treating physicians declined to provide narcotic medication, and another, physician John Cruz, recommended that she decrease her narcotic pain medication usage. (*Id.* at 21, 318, 433.) While Conant is correct that Dr. Cruz continued to prescribe an opioid medication through the date of the administrative hearing, (Dkt. No. 11 at 9), the record supports the ALJ's conclusion that Conant abused drugs

11

after the alleged disability date.  (Tr. at 318 (a March 2012 treatment record indicating that, because a drug test was positive for substances that were not prescribed, physician David Kammerman would not prescribe narcotic pain medications to Conant).)  Thus, this conclusion is supported by substantial evidence and was a proper consideration in the ALJ's credibility assessment.  *See Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (holding that a history of substance abuse is a permissible consideration in evaluating a claimant's credibility); *Arrington v. Astrue*, No. 09-CV-870, 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011) (same).

     Conant also objects to the ALJ's reliance on an October 2000 treatment record indicating that her family members are "significantly drug addicted and poorly functional" to discount her testimony that she is only able to care for a young grandchild who lives with her, with the help of such family members.  (Tr. at 21; Dkt. No. 11 at 9.)  Conant argues that the ALJ legally erred in relying on such evidence because it is stale, and, moreover, irrelevant to her credibility, because the evidence supports the conclusion that she needs such family members' help and cannot afford to obtain services from a professional housekeeping or childcare service.  (Dkt. No. 11 at 9-10.)  First, the court notes that June 2008 treatment records

12

indicate that Conant's family continued to suffer from substance abuse and dysfunction, with Conant explaining that her family visits her against her wishes because her home is more stable than theirs, and that her mother and siblings abuse drugs. (Tr. at 476-78.) She stated that her husband was "fed up with her drug-addicted family." (*Id.* at 476.) While this treatment record predates the alleged onset of Conant's disability, it is far more recent than the treatment note of which she complains is stale. (Dkt. No. 11 at 9.) Ultimately, the court finds the ALJ's evaluation of Conant's credibility on this point to be reasonable. Conant testified to suffering extreme functional limitations that prevent her from caring for her basic needs. (Tr. at 59, 62-64.) When questioned by the ALJ as to how she cares for her four-year-old grandchild who lives with her and her husband, when her husband works full-time during the day, Conant explained that her daughters, sister-in-law, brother, and mother come and stay with her because she "can[not] do it by [her]self." (*Id.* at 78-79.) Based on this testimony, it was reasonable for the ALJ to consider Conant's prior statements that her family members suffer from significant drug addiction and dysfunction. *See Netter*, 272 F. App'x at 55 ("Ultimately, [i]t is the function of the [Commissioner], not [the reviewing courts], to resolve

13

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (internal quotation marks and citation omitted)).

Finally, Conant complains that the ALJ impermissibly considered the ALJ's own observation that Conant's "nails were done at the hearing, indicating that [Conant] either did them herself or had someone do them for her." (Tr. at 21.) The ALJ concluded that "this is inconsistent with her testimony and consistent with an ability to sit for more than the very limited ability to which she testified, and as required in sedentary work." (*Id.*) Conant argues that the ALJ erred when she failed to inquire of Conant about her decorated fingernails. (Dkt. No. 11 at 10.) She claims that she did not sit for a protracted period to decorate her nails, but rather, used "stick-on nail art that can be purchased in a drug store." (*Id.*) Accordingly, Conant requests the court remand this case to provide her with the opportunity to testify about her nails on the date of the administrative hearing. (*Id.*)

Where an individual attends an administrative hearing conducted by the ALJ, the ALJ may consider "her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p, 61 Fed. Reg. at 34,486. Here, it was

14

reasonable for the ALJ to consider her observation of Conant's nails, considering Conant's testimony that she cannot sit for more than fifteen to twenty minutes, has extreme difficulty grasping anything with her right, dominant hand, and cannot write more than one sentence. (Tr. at 70-72.) While Conant may have an explanation for her nail art that is consistent with her allegations, the court concludes that remand is not required on this basis. The ALJ's observations of Conant were only one factor in her thorough discussion of Conant's credibility, as discussed above. *See* SSR 96-7p, 61 Fed. Reg. at 34,488 ("In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."). Ultimately, as the ALJ considered the entire case record, including the objective medical evidence, Conant's own statements about her symptoms, statements provided by her treating and examining physicians, and the ALJ's own observations of Conant, her credibility determination was legally sound. *See Arrington*, 2011 WL 3844172, at *13; SSR 96-7p, 61 Fed. Reg. at 34,486. Moreover, the ALJ's conclusion that Conant's subjective

complaints were not credible to the extent that they suggested impairment greater than the ability to perform sedentary work, (Tr. at 20-23), is supported by substantial evidence. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*").

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Conant's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 17, 2016
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge